Dahath Electric Company, Appellant, *v.* Suburban Electric Development Company.

Argued October 5, 1938. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN and BARNES, JJ.

*Clyde A. Armstrong,* of *Thorp, Bostwick, Reed & Armstrong,* with him *John E. Laughlin, Jr.,* and *J. Roland Johnston,* for appellant.

*J. Roy Dickie,* with him *H. A. Robinson,* of *Dickie, Robinson & McCamey,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, December 5, 1938:

Plaintiff claims it had an exclusive contract with defendant for the sale in Fayette County of the articles which the latter distributes. The contract was terminable by either party on written notice. Plaintiff asserts that, while the contract was in force, defendant entered into an arrangement with West Penn Appliance Company, under which it was given the right to sell the articles in the territory reserved to plaintiff. This action in assumpsit is brought under Section 11 of the Practice Act of May 14, 1915, P. L. 483, 12 PS Sec. 393, to compel defendant to account for the sales made by the West Penn Company, and to pay to plaintiff the amounts which would be due to it under the contract had it made the sales. At the trial the court entered a compulsory nonsuit which, on motion, it refused to take off. Plaintiff appeals from this action.

If an exclusive agency in the territory covered was to be created, the thing which strikes one most forcibly after reading the contract is that, although it is a business agency agreement, entered into by business men, nothing is mentioned about the exclusiveness of the agency. The words "exclusive" or "sole," in defining the agency, are not used, and yet plaintiff's representatives who negotiated the contract, would, it appears to us, be keen to see that one or the other of these words was used in the agreement, if the parties' intent was to create an exclusive agency for the territory, and would not have left this most important feature of their understanding to implication and, to say the least, in doubt.

While it is now argued that the writing by its terms imports an exclusive agency, that was not the view taken by plaintiff when outlining its case in the statement of claim. In that pleading the right of action is based, not upon the terms of the agreement, but upon the allega-

tion that the representatives of defendant, who negotiated the contract in its behalf, one of them being its president, orally represented to plaintiff that the agency agreement was an exclusive one, and that no other person or dealer would be permitted by defendant to sell its products in Fayette County, and these oral representations induced plaintiff to enter into the contract. Now the argument is presented to us that within the folds of the agreement itself are to be found provisions which show, at least impliedly, that the agency was to be an exclusive one. It is said that because plaintiff is referred to as "the dealer" and in certain instances the territory allotted is described as "his territory" or "the dealer's territory" the implication arises that the agency was to be an exclusive one. This by no means follows; the same language could be used if there were other agents in the territory. It is contended that, because defendant reserved the right to increase or decrease plaintiff's territory upon written notice, this imports a sole agency. To us this has no bearing on the question of the exclusiveness or nonexclusiveness of the agency; it would apply in either event. The provision is a limitation on the dealer (plaintiff) and not an increase of its rights. It is urged that, because plaintiff is required to send defendant copies of installation reports and of agreements with members of its sales organization and a list of prospective purchasers, this gives rise to the inference of exclusiveness of the contract, that such a provision would not appear in the contract unless it were exclusive, because it would contain the possibility of information to competitors if there were other agents in the field, or to defendant itself, if it decided to compete with plaintiff. We are unable to give it this meaning, because obviously its purpose was to insure to defendant a record of the products sold, the installations made and the prospects for further business.

It is argued that because there is a provision in the contract that, when a sale is made in one territory and

installation in another, the dealer in the territory where the sale is made shall be entitled to 30% of the dealer's gross profit, and the dealer in whose territory installation is made shall be entitled to 70% of such profit, that this contemplates but one dealer in a territory. Not so at all as we view it. This same provision could appropriately be in a contract where there are several dealers in a given territory; however many dealers there were, the division of the profits would only be between the dealer who made the sale and the dealer who made the installation.

A paragraph in the contract, cited as aiding plaintiff's contention, provides that it shall maintain a satisfactory installation and maintenance service and take care of repairs and replacements in the territory. The paragraph goes on, however, to state that this shall apply to all of the products sold by it or other representatives. We do not see how this could be construed as creating an exclusive agency, rather the opposite conclusion seems to arise. We do not attach any significance in this controversy to the provisions requiring the putting on of a service man or providing that automobiles equipped with one of the appliances shall be supplied by the salesmen. These requirements might very well be stipulated for where there would be more than one agency. We, therefore, conclude that in the contract as written an exclusive agency is not created.

On the other ground of plaintiff's appeal, that the contract is ambiguous (which we think it is not) and that the court should have permitted the introduction of evidence to establish the interpretation put upon the agreement by the parties, when we come to consider the offers of testimony upon which the argument is based, we find that in their essence the offers are of parol evidence to alter and add to the terms of the writing, without any claim that the contended for additions were omitted from the finally written agreement by fraud, accident or mistake. One offer was to prove that during

the negotiations officers of defendant assured those of plaintiff that the form of the contract which they were to sign would give them the exclusive agency in Fayette County and that the contract was executed relying upon these assurances. Another offer was made to the effect that a bank was assured by one authorized by defendant that the form of the contract was to be an exclusive agency contract so that it might make loans to plaintiff. The purpose of all the offers made was to show that the contract was to be an exclusive one, although it does not so state. In addition to the rulings which we have made in many cases, that written contracts cannot be varied by parol in the absence of a showing that what is sought to be read into the writing was omitted by fraud, accident or mistake, we have in this contract the specific provision: "All previous agreements between the parties are superseded and cancelled by this agreement. This agreement is not to be varied in any manner except in writing." With this stipulation agreed to by plaintiff, we could not assent to the receipt of testimony which would wipe it out: *Gross v. Exeter Machine Works, Inc.*, 277 Pa. 363, 121 A. 195; *Hauer v. Martin*, 284 Pa. 407, 131 A. 187. What appellant is seeking to do here is to create an ambiguity in the contract by parol testimony when no ambiguity exists in the writing. In principle the case, in the aspect we are now considering, is ruled by *Speier v. Michelson*, 303 Pa. 66, 154 A. 127, and the cases which have followed it, one of the latest being *Germantown Trust Co. v. Emhardt (No. 1)*, 321 Pa. 561, 184 A. 457. Other offers, made by plaintiff, we regard as immaterial and insufficient to affect the writing.

As heretofore stated, parties to this contract, competent business men, had they contemplated an exclusive agency, would we think have so provided in their written agreement. It could not be properly or justly concluded that they left this most important feature of the agreement out to be read into it by inference. As was said in *American Dressler Tunnel Kilns, Inc., v. Holt*, 269 Pa.

293, 297, 112 A. 43, "Considering the entire contract, its meaning is not doubtful, and, therefore, we cannot consider the evidence, pro and con, as to the parties' own construction thereof. It is only in case of doubt or ambiguity that the parties' own construction can be resorted to." This is particularly true here, where the parties in their written agreement have stated that everything preceding it is superseded and cancelled by it and that the agreement as written is not to be varied in any manner except in writing.

Judgment affirmed.